No. 22-16499

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

$1,106,775.00 IN U.S. CURRENCY,
Defendant,

OAK PORCELLI,
Claimant-Appellant.

---

Appeal from the United States District Court
for the District of Nevada
Case No. 3:20-cv-00158-MMD

---

**APPELLANT'S PETITION FOR PANEL REHEARING
AND REHEARING EN BANC**

---

DAVID M. MICHAEL
EDWARD M. BURCH
Law Office of Michael & Burch, LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104
(415) 946-8996

Attorneys for Appellant
OAK PORCELLI

## TABLE OF CONTENTS

Introduction and FRAP 40(b) Statements …………………...………………… 1

   I.   Factual and Procedural Background………………………………...……… 6

       A. Relevant Facts Leading to the Litigation ……………………..…... 6

       B. Relevant Procedural History And Rulings Presented For Review …. 7

  II.   Reasons for Granting Rehearing ………………………………………..12

       A. The Core Reform of CAFRA – Shifting the Burden From Claimant………………………………………………………… 12

       B. The Majority's New "Standing" Requirement, Contrary to Precedent, Creates A Troubling, Unconstitutional Shift of Burdens In Forfeiture Going Forward ………………………………………………….. 13

CONCLUSION…………………………………………………………….. 19

CERTIFICATES…………………………………………………………… 20

# TABLE OF AUTHORITIES

<u>Cases</u>

*United States v. $133,420.00,* 672 F.3d 629 (9th Cir. 2012) ...................... 1, 3, 9, 15

*United States v. $154,853*, 744 F.3d 559 (8th Cir. 2014) ............................. 4, 9, 17

*United States v. $239,400.00*, 795 F.3d 639 (7th Cir. 2015) ......................... passim

*United States v. $31,000.00,* 872 F.3d 342 (6th Cir. 2017) ................................... 13

*United States v. $574,840*, 719 F.3d 648 (7th Cir. 2013). ...................................... 15

*United States v. $999,830.00*, 704 F. 3d 1042 (9th Cir. 2012) ....................... 1,2, 14

*United States v. 17 Coon Creek Rd*., 787 F.3d 968 (9th Cir. 2015) ............... 1, 2, 16

*United States v. Int'l Human Rights Comm'n*, 825 F.App'x 468 (9th Cir. 2020) 3, 14

*United States v. One Turbo-Prop Aircraft,* 619 F.3d 1275 (11th Cir. 2010).......... 13

*United States v. Real Property in Section 9,* 241 F.3d 796 (6th Cir. 2001)............ 12

## **Statutes**

**United State Code**

18 U.S.C. § 981(a)(1) ................................................................................................. 7

18 U.S.C. § 983(c) ...................................................................................................... 5

21 U.S.C. § 881(a)(6) ................................................................................................. 7

## **Federal Rules of Civil Procedure**

Fed.R.Civ.P 12(b)(6) .................................................................................................. 3

Fed.R.Civ.P. 26(b)(1) ................................................................................................. 9

Fed.R.Civ.P. 33............................................................................................................ 9

Fed.R.Civ.P. 34 ................................................................................ 9

Suppl. Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions

Rule G ....................................................................................... passim

## Other Authorities

CAFRA Legislative History, viewable at https://www.justice.gov/criminal-
    mlars/file/1042296/download ............................................................ 13

## Introduction and FRAP 40(b) Statements

Appellant had property seized from his possession by law enforcement, and in his initial verified claim and subsequent discovery responses in the ensuing civil forfeiture action against the property, he repeatedly swore ownership of the property and even explained and detailed that ownership. Yet, the district court prohibited him from obtaining responses to his own discovery or having his statutorily authorized Fourth Amendment motion to suppress adjudicated, while demanding further discovery responses from him, to ultimately justify striking him "at the very beginning of the case[,]" (Dissent at 30) for a supposed lack of standing. The panel affirmed in a split decision.

**40(b)(2) En Banc.** Rehearing en banc is necessary because the Majority conflicts with published opinions of this court, creates a circuit split, and involves an exceptionally important Constitutional issue with broad implications, as the Dissent meticulously outlines. Dissent at 29 (Majority "portends a significant and ill-founded change in the way civil asset forfeiture proceedings will be conducted.")

Specifically, **(A)** the Majority opinion conflicts with *United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 975 (9th Cir. 2015), *United States v. $999,830.00*, 704 F. 3d 1042, 1043 (9th Cir. 2012), and *United States v. $133,420.00,* 672 F.3d 629, 640 (9th Cir. 2012), and the full court's consideration is necessary to secure

1

(and maintain) uniformity of the court's decisions. Dissent at 30 ("majority's ratification of the government's approach contravenes our precedents").

*17 Coon Creek Rd*., 787 F.3d at 975 held that when a claimant has Article III standing, noncompliance with limited Rule G(6) interrogatories [1] is <u>not</u> a "standing defect, precluding the court from taking any action in the case." Yet, the Majority held the opposite – that answering Rule G(6) interrogatories was a <u>threshold</u> "standing" issue (Opinion at *e.g*. 6, 19) justifying the district court's refusal to allow Appellant his own discovery or adjudicate his Rule G(8)(a) motion to suppress at the preliminary stages of litigation. [2]

In *$999,830.00*, 704 F. 3d at 1043, this Court squarely held that a sworn statement of ownership *ipse dixit* sufficed to establish a forfeiture claimant's Article III standing at the initial stages of litigation, and, further, that evidence which cast doubt on that ownership was "not properly weighed against [the claimant's] unequivocal assertion of ownership for determining the existence of Article III standing at this preliminary stage of the proceedings." *See also United*

---

[1] Rule G(6), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions allows limited interrogatories to a forfeiture claimant at the start of a case to allow the government to gather information bearing on Article III standing.

[2] The refusal to adjudicate the motion to suppress is particularly troubling given that the evidence supposedly undermining Appellant's "standing" was precisely that challenged by his statutorily authorized motion. *Cf.* Opinion at 23, Dissent at 30, 58, 61.

*States v. Int'l Human Rights Comm'n*, 825 F.App'x 468, 469 (9th Cir. 2020) (same).

Yet, the Majority here held that when "evidence cast doubt on [claimant's]

ownership," the claimant "has a discovery obligation under Rule G(6) to provide

some evidence that he has Article III standing to claim that the money is his"

before he can be said to have standing at the preliminary stage of the proceedings.

Opinion at 6. This cannot be reconciled, as "this case never even reached the point

of Rule 12(b)(6) motions practice." (Dissent at 49).

Similarly, in *$133,420.00*, 672 F.3d at 640, this Court held that a sworn

statement of ownership of cash undisputedly seized from the claimant's possession

was sufficient for Article III standing <u>at the later summary judgment stage,</u>

notwithstanding claimant's alleged prior inconsistent statements tending to negate

his ownership. *See also* Dissent at 49-50 ("If the government had moved for

summary judgment now, it should have lost."). Yet, the Majority here indicated

that Appellant lacked standing even at an earlier, pre-discovery and pre-summary

judgment stage of litigation.

**(C)** The majority opinion also squarely conflicts with both *United States*

*v. $239,400.00*, 795 F.3d 639, 645 n3 (7th Cir. 2015) ("The government [ ] argues

that granting its motion to strike was proper because claimant[ ] failed to comply

with Rule G(6) [but] claimants objected to the scope of the interrogatories [and]

3

did assert, under oath and unequivocally, that he owns the defendant property and that it was in his possession when it was seized [which] facts are sufficient for a claimant to establish standing at summary judgment [so] [f]urther special interrogatories and responses were not necessary to determine standing, so the district court would have abused its discretion if it had granted the motion to strike on this alternative ground") and *United States v. $154,853*, 744 F.3d 559, 563- 564 (8th Cir. 2014) (same).

**(D)** For the same reasons, the proceeding involves one or more questions of exceptional importance. The Majority creates a new, <u>threshold</u> standing requirement for forfeiture claimants, not only untethered from and in addition to what the Constitution requires, but in a way that exactly flips one of the core, central reforms of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). [3]

Specifically, the Majority reads the procedural guidelines of Rule G to require a claimant to provide evidence of a non-forfeitable ownership at the beginning of the case, to establish what it labels "standing," before claimant may participate in any way, i.e. to have a right to their own discovery responses or a statutorily authorized motion to suppress. *Cf. $239,400, supra*, 795 F.3d at 645-46 ("If we were to read Rule G to require a claimant to demonstrate 'legitimate' ownership, we would thus nullify a central reform of CAFRA. … That would

---

[3] Pub. L. No. 106-185, 114 Stat. 202.

4

effectively shift the burden of proof from the government back to the claimant, contrary to 18 U.S.C. § 983(c)…. [constituting an] erroneous melding of standing and the merits in civil forfeiture actions …")

The Majority thereby creates "a significant and ill-founded change" in the lion's share of civil forfeiture actions going forward, by giving the government a "blueprint" to nullify Rule G(8)(a) and flip the burden of proof. Dissent at 30.

> [T]he government can [now] avoid any Fourth Amendment inquiry into the legality of its own searches—even when the claimant has a reasonable expectation of privacy in the place searched—by forcing the claimant into a one-sided Rule G(6) discovery battle that the claimant can almost never win unless he shows his claim is legitimate. But that is contrary to the civil forfeiture statute, which places the burden of proof on the government. And it only rewards the government for what may be improper search and seizure tactics.

Dissent at 43.

The profound, fundamental flaw of the majority opinion is treating claimants' "legitimate," i.e. non-forfeitable ownership, and compliance with Rule G(6) interrogatories collectively as "standing" and assigning it the same threshold significance given to Article III case or controversy standing.

The majority opinion must be reheard en banc and reversed. [4]

**(b)(1) Panel Rehearing.** Appellant contends that the panel overlooked that

---

[4] The panel's opinion also effectively decides a second companion appeal, *United States v. $204,700 in U.S. Currency*, No. 22-16661, which should also be along side this case.

he specifically challenged the trial court's orders that stayed his motion to suppress and the government's obligation to answer his own discovery, while allowing the government unfettered discovery responses, <u>based on the legal conclusion that Appellant lacked Article III standing</u>. Even the Majority acknowledges that Appellant had standing at that stage. Orders based on erroneous legal conclusions/standards are reversible on appeal. The stay orders here well preceded the order/s determining that Appellant failed to adequately provide Rule G(6) responses. The panel solely reviewed the latter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Relevant Facts Leading to the Litigation

In the mid-afternoon in November 2019, Appellant Oak Porcelli was driving with a passenger in a rental vehicle with Florida plates on the highway in Nevada, when he observed a manned patrol vehicle on an on-ramp ahead. ER 247, 251-252, 259.

As quickly became obvious, the officer was part of a highway interdiction team (ER 252) – engaging innocent motorists in detained conversations in an effort to search vehicles. On the false premise of a traffic stop, which Porcelli later challenged as baseless in the first instance, the officer orchestrated, with at least two other officers, an unreasonably extended interrogation to trip up the travelers' story, and ultimately search them, their vehicles and belongings, discovering and

seizing – with the help of federal DEA agents – what later became Defendant currency, totaling $1,106,775. ER 247-8, 259, 260-265.

**B.    Relevant Procedural History And Rulings Presented For Review**

Administrative forfeiture proceedings ensued but ended when Porcelli timely served an ownership claim. ER 258.

On March 10, 2020, the government filed its complaint for forfeiture in district court, alleging alternatively that the currency was forfeitable under 21 U.S.C. § 881(a)(6) as drug related or pursuant to 18 U.S.C. § 981(a)(1) for being connected to some other unspecified illegal activity. ER 272-273.

On April 30, 2020, Porcelli filed his verified claim that he <u>owned</u> "all of the defendant property taken from his vehicle, including from his luggage and other items." ER 254-255.

That same day, as specifically authorized by Rule G(8)(a), Porcelli filed a motion to suppress evidence, challenging the stop and search of his person, vehicle, and belongings, as violative of the Fourth Amendment. ER 247-252, 283.

On May 12, 2020, the government made a barrage of filings claiming Porcelli lacked Article III standing and asking the district court to stay the motion to suppress until:

(1) Porcelli filed his Rule G(5)(b) answer to the complaint (which was not due for another 9 days),
(2) Porcelli responded to statutorily limited Rule G(6) special interrogatories (which had not yet even been served (Doc. 16 at 2:15-16),

meaning Porcelli's answers or objections were not due for another 21 days),

(3) the government "has had a reasonable opportunity to investigate, and attempt to verify, the information contained" in the not yet due responses to interrogatories, and

(4) the government "has had a reasonable opportunity to file, and pursue a hearing on," a yet-to-be filed Rule G(8) motion to strike, challenging either Porcelli's standing or his responses to the concurrently served Rule G(6) special interrogatories.

ER 283*,* Doc. 16 at 2-3; Doc. 17 at 2-3.

The government argued that "standing" was "still at issue" because the evidence derived as a result of the stop and search of Porcelli — the very evidence Porcelli moved to exclude as inadmissible via his Rule G(8) motion to suppress — created an ambiguity as to whether Porcelli actually owned the currency, thus there were "substantial questions about a claimant 's Article III standing." E.g., Doc. 16 at 6-9.

Astonishingly, the trial court assented, before Porcelli could even respond. Doc. 19 at 2. Porcelli nonetheless filed an opposition on May 21, 2020 in an attempt to point out the many fallacies of the government's positions. Doc. 21 at 2-13.

On June 1, 2020, the Court issued a scheduling order which included a deadline for completion of discovery and dispositive motions. ER 283-284, Doc. 26.

On June 5, 2020, Porcelli timely served his verified Rule G(6) responses and objections (ER 222-234), answering all of the interrogatories related to his identity (ER 224-225), swore that "I own all of the Defendant currency seized from the vehicle I rented and had just been driving, and consequently I had and have a right to possess it and otherwise exercise dominion and control over it[,]" (ER 226) and objected to the scope of the propounded special interrogatories by citing and discussing, among other authorities, *$133,420.00, supra*, 672 F.3d at 640, *$154,853*, *supra*, 744 F.3d at 563-564, and *$239,100*, 795 F.3d at 645 n3, *supra*, as well as Fed.R.Civ.P. 26(b)(1) (discovery limited to what is "proportional to the needs of the case, considering [ ] the importance of the discovery in resolving the issues[.]") ER 227.

On June 15, 2020, Porcelli served his first set of interrogatories and requests for production pursuant to Fed.R.Civ.P. 33 & 34. ER 201-221.

On June 26, 2020, the government filed a motion to compel further responses from Porcelli to its limited Rule G(6) interrogatories and to "conditionally strike" Porcelli's claim, admitting the motion lacked merit as filed, since a claimant must be allowed an opportunity to cure any perceived defects in his compliance with Rule G(5) or (6) before he can be struck from a forfeiture litigation, but defining its speculative motion as "brief deferment of a decision" on

9

the presumption that the government would not be satisfied with his future responses Rule G(6) responses. ER 284.

On July 8, 2020, the government moved to stay its obligation to respond to Porcelli's interrogatories and requests for production. ER 284, Doc. 30.

On August 8, 2020, the magistrate court granted the government's motions to compel and to stay its obligations to respond to Porcelli's discovery, on the basis that Porcelli lacked standing. ER 134-200; ER 284-285, ER 142, Doc. 38 at 8:16-22.

On November, 23, 2020, the district court overruled Porcelli's objections to the magistrate's order, holding that Porcelli lacked standing "to challenge an in rem civil forfeiture action" (ER 127, n1) and that "[d]etermining whether Claimants have standing is the first and most critical question in this action." ER 131.

On December 23, 2020, Porcelli provided supplemental Rule G(6) responses (ER 65-79, Doc. 76-1 pp 34-48), maintaining his objections but adding more substance, including detailing his work in the film and TV industry, providing a comprehensive list of the details of every project he worked on. ER 71-73.

On January 21, 2021, Porcelli moved to lift the unilateral stay of discovery. ER 285, Doc. 48.

On January 29, 2021, the government moved to strike Porcelli from the case for supposedly inadequately responding to Rule G(6) interrogatories, (Doc. 49 at 11) and simultaneously filed a "Motion to Pend the Resolution" of Porcelli's motion to lift the discovery stay because he lacked "entitlement to continue as a party in this case", and also asked to continue to refuse to entertain Porcelli's motion to suppress. Doc. 50 at 3 (emphasis added).

On March 9, 2021, the magistrate again assented to the government's commands – refusing to lift the unilateral stay of discovery and granting the government's motion to "pend" its response to Porcelli's motion to lift the stay (ER 92-95, Doc. 55; ER 96-125), once again because Porcelli lacked "standing." ER 93. Porcelli again timely objected to the Magistrate's ruling. ER 286 (Docs. 56-58).

On June 7, 2021, the District Court again overruled Porcelli's objections because he lacked "standing" to participate. ER 90.

Porcelli, convinced that the court's ruling that he lacked "threshold" standing was obviously wrong, moved for certification of interlocutory appeal (ER 286-287), which was denied, holding that Porcelli had not "establish[ed] … standing in order to challenge an in rem civil forfeiture action, … a threshold issue.' " ER 82-83. The District Court gave Porcelli 15 days to provide further Rule G(6) responses. ER 86.

Porcelli respectfully declined, filing a motion for reconsideration that was denied in a text only minute order, and subsequent notice reiterating that he was standing on his legal position. ER 87, Doc. 73 & Doc. 74; ER 288 (Doc. 75).

Porcelli was stricken and a final judgment of forfeiture issued, and he appealed. ER 288; ER 27-31; ER 1-26; ER 276-277.

On March 11, 2025, a divided panel of this Court affirmed.

## II. REASONS FOR GRANTING REHEARING

**A.    The Core Reform of CAFRA – Shifting the Burden From Claimant**

On April 11, 2000, Congress, to address due process infirmities in civil forfeiture and make procedures fair to claimants, passed CAFRA – a "*reform*" that "specifically designed to rectify an unfairness to the individual" claimant and correct an "aberration that existed previously … [and] had been criticized repeatedly by the courts and legal commentators[.]" *United States v. Real Property in Section 9,* 241 F.3d 796, 799 (6th Cir. 2001).

Specifically, "[u]nder the old statutory scheme, once the government made a showing of probable cause, the burden shifted to the claimant to prove by a higher standard of evidence — preponderance of the evidence — that forfeiture is not required. If the claimant had set forth evidence only equal to the government's — that is, probable cause — the government prevailed and the property was lost." 241 F.3d at 797.

"CAFRA [ ] shifted the burden of proof in civil forfeiture actions by forcing the Government to prove that property is subject to forfeiture as opposed to 'forcing the property owner to prove his property is not subject to forfeiture.' " *$239,400, supra*, 795 F.3d at 645-6. This was "extraordinary step." *United States v. One Turbo-Prop Aircraft,* 619 F.3d 1275, 1277-8 (11th Cir. 2010).

Congress recognized that courts had intimated that the probable cause burden was likely unconstitutional, and characterized its burden shift in CAFRA as a "core reform." CAFRA Legislative History, viewable at https://www.justice.gov/criminal-mlars/file/1042296/download, at pp. 242-243, 278, 423.

The burden shift has been repeatedly and rightfully recognized as a "central purpose" of CAFRA. *United States v. $31,000.00,* 872 F.3d 342, 353-354 (6th Cir. 2017) (citing approvingly of *$239,400*, *supra*, for "rejecting a reading of Rule G that would 'require a claimant to demonstrate 'legitimate' ownership' because it would 'nullify' a central purpose of CAFRA").

The Majority here nullified that core reform by redefining "standing." *See, e.g.,* Dissent 47-49.

## B.    The Majority's New "Standing" Requirement, Contrary to Precedent, Creates A Troubling, Unconstitutional Shift of Burdens In Forfeiture Going Forward

There was never any doubt that Porcelli had Article III standing when he

13

was denied the ability to have a statutorily authorized motion to suppress heard and have his discovery responses answered. *$999,830.00, supra,* 704 F. 3d at 1042-43 (sworn claim of ownership sufficient at pleading stage for claimant's standing); Dissent at 49 ("Porcelli is correct that he has established standing at this juncture.")

There is uniform consensus among the circuits on this issue. *See* Appellant's Reply at 4 (citing cases).

Further, this Court specifically held that evidence the government might point to as undermining such ownership does not effect a claimant's standing at the "preliminary" stages of the preceding. *$999,830.00, supra*, 704 F. 3d at 1042-43; *Int'l Human Rights Comm'n*, 825 F.App'x 468, 469 ("We addressed this issue in [ ] $*999,830.00*[, *supra*, where] we … conclud[ed] [that] a claimant's 'unequivocal assertion of ownership establishes Article III standing at this stage of proceedings' and held the district court erred by considering the claimant's alleged prior inconsistent statements to negate his assertion of ownership at the pleading stage[.]")

The Majority never cites *$999,830.00* and tacitly concedes that Porcelli had Article III standing when he was denied adjudication of his Rule G8(a) motion to suppress and responses to his own discovery requests. Majority at 16 ("Perhaps the responses to the government's special interrogatories will not be useful until later in the case, when the claimant must satisfy a higher burden to prove standing.")

14

The Majority instead creates a brave new, additional threshold "standing" requirement; to wit: if Rule G(6) interrogatories are served, claimant must answer them to establish "standing."  In its own words, a claimant has a "discovery obligation" to establish Article III standing to participate in the case.

The creation is but an obvious conflation and melding of the Constitutional concept of standing with answering mere civil discovery. Majority at 6 ("Porcelli [ ] has a discovery obligation [ ] to provide some evidence that he has Article III standing"). *Cf. $239,400, supra*, 795 F.3d at 645 (courts should not conflate standing with the merits of forfeiture).

As Judge Posner stated sharply:

> At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it. This is constitutional law 101.

*United States v. $574,840*, 719 F.3d 648, 653 (7th Cir. 2013).

Even putting that aside, *$133,420, 672 F.3d at 640,* squarely holds that "some evidence" for Article III standing in civil forfeiture <u>even at the later summary judgment stage</u> is satisfied with, as here, an admission in the government's complaint that the Defendant property was seized from the claimant's possession. This is largely because courts should not weigh evidence at summary judgment. Appellant's Brief at 27 (citing cases). The Majority even goes

15

so far as to question this basic, well-established standard. Majority at 15 n2.

Furthermore, at summary judgment in forfeiture, the court must only consider admissible evidence (Appellant's Brief at 27), and Porcelli had, as specifically authorized by Rule G(8)(a), challenged the admissibility of the very evidence said to undermine his ownership. Dissent at 47-50, 57-58, 64, 68.

Aside from conflicting with *$999,830.00's* and *$133,420's* holding that prior inconsistent statements do not negate a Claimant's Article III standing through summary judgment, the Majority squarely conflicts with the *17 Coon Creek, supra*, 787 F.3d at 976 & 979 holding that a claimant's standing is not contingent on his compliance with mere civil discovery such as Rule G(6) interrogatories.

Porcelli, via this appeal, specifically challenged the trial court's orders that (1) stayed his motion to suppress and (2) refused to allow government responses to his own discovery, on the precise and sole basis that Porcelli lacked "standing." *See, e.g.,* Notice of Appeal; Appellant Brief at, e.g., 2 (issues #1-4) & 12 ("Porcelli [ ] challenges th[e] August 8, 2020 final pretrial order by the magistrate, which the district judge refused to overrule after timely objection by Porcelli")."

These challenged orders – clearly erroneous and reversible [5] -- were well before the district court ever got to the issue of whether the supplemental Rule

_____

[5] *See, e.g., United States v. MacDonald*, 435 U.S. 850, 853 (1978); *United States v. Gougher*, 835 F.App'x 231, 235 (9th Cir. 2020) (*citing United States v. Sellers*, 906 F.3d 848, 851-2 (9th Cir. 2018).

G(6) responses were adequate, in fact, some were before the interrogatories were even served.

The Majority refuses to review these prior orders, and only answers the "narrow and technical discovery issue [of] [w]hether Porcelli complied with [Rule] G(6)[,]" which came much later. Majority at 5.

Porcelli did not argue that the government could never challenge his standing through discovery, as the majority frames it, rather, he argued that the government could not do so while putting everything else on hold at the onset of the case <u>when Porcelli clearly had standing</u>.

Independently, Appellant maintains that *$239,400, supra,* 795 F.3d at 645, n3 (citing *$154,853, supra*, 744 F.3d at 564) adopted the correct, simple rule regarding the juxtaposition of Article III standing and Rule G(6), which this Court, en banc is free to, and should, adopt.

The Majority's statement that the holding in *$239,400, supra* was dicta is preposterous. There, the government fully briefed and argued in the district court and court of appeals that the order striking its claimant should be affirmed on the "alternative ground' that that claimant did not sufficiently answer Rule G(6) interrogatories. The Seventh Circuit squarely held that because the claimant established his Article III standing at summary judgment with his Rule G(6) responses, there was no need for further responses, and the strike order had to be

17

reversed. The decision is not binding, but it is not dicta, and it is the correct one, which this Court en banc should adopt.

The Dissent here would reverse and opt for a middle ground, where Porcelli's supplemental responses would entitle him to a suppression ruling and mutual discovery. This is less desirable, but is nonetheless an appropriate subject for en banc review, because, as the Dissent explains, the Majority provides no guidance on what constitutes adequate Rule G(6) responses (Dissent 62, 68-69), which was Appellant's basis for refusing further responses.

Relatedly, en banc review is warranted also because, as the Dissent meticulously outlines, the Majority has given the government a blueprint to nullify Rule G(8)(a) (which expressly mandates that the Fourth Amendment exclusionary applies to civil forfeiture) and thereby flip the burden back to the unconstitutional one that CAFRA corrected.

The implications, as the dissent outlines, are profound, troubling, and far reaching. Dissent at 57-59, 63-64. The Majority condones "a significant misuse of the civil forfeiture process and one that is destined to incentivize unlawful searches and seizures." Id. at 65.

> The majority opinion [ ] tells the government that if it is worried about
> a motion to suppress being granted[,] it should just use the fruits of a
> possible Fourth Amendment violation to tee up a discovery violation
> where the Fourth Amendment issues will not be considered. That will
> lead to the entire civil forfeiture case being litigated through what is
> supposed to be the narrow Rule G(6) interrogatory device … [and]

18

will have profound consequences for the burden of proof, the frequency with which allegedly unlawful searches and seizures are subject to judicial examination, and the ability of bona fide owners to claim property that the government has wrongfully taken from them.

Dissent 68, 70.

## CONCLUSION

For these reasons, the Court should grant rehearing en banc, or alternatively grant a panel rehearing.

Respectfully submitted,

Dated: April 24, 2025

_s/Edward M. Burch_
EDWARD M. BURCH
DAVID M. MICHAEL
EDWARD M. BURCH
Law Office of Michael & Burch, LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104

Attorneys for Appellant/Petitioner
OAK PORCELLI

**CERTIFICATE OF ELECTRONIC SERVICE**


    I hereby certify that, on April 25, 2025, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Edward M. Burch*
EDWARD M. BURCH
DAVID M. MICHAEL
Law Office of Michael & Burch, LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104
(415) 946-8996

Attorneys for Appellant/Petitioner
OAK PORCELLI

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 22-16499

    I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿    Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
     32(a)(4)-(6) and **contains the following number of words:** | 4,193 | .
     *(Petitions and responses must not exceed 4,200 words)*

   **OR**

◯    In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Edward M. Burch      **Date** | 04/24/2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                              *Rev. 12/01/24*