CA No. 22-16499

# In the
# United States Court of Appeals
## For the Ninth Circuit

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

$1,106,775.00 IN U.S. CURRENCY,
Defendant-Appellant,

OAK PORCELLI,
Claimant-Appellant.

On Appeal from the United States District Court
for the District of Nevada,

**DC No. 3:20-cv-00158 (Hon. Miranda M. Du, *C. J.*)**

**GOVERNMENT'S RESPONSE TO
PETITION FOR REHEARING**

SIGAL CHATTAH
United States Attorney

PETER H. WALKINGSHAW
Assistant United States Attorney

ADAM FLAKE
Appellate Chief and
Assistant United States Attorney
400 South Virginia, Suite 900
Reno, Nevada 89501
(775) 784-5438
*Attorneys for the United States*

Date submitted: June 26, 2025

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................... 3

        A.    A Traffic Stop Uncovers Large Amounts of Cash in Vacuum-Sealed
              Bags, of Which Porcelli Disclaims Any Ownership. ...................... 3

        B.    Porcelli Repeatedly Refuses to Comply with the District Court's
              Orders Concerning Discovery Regarding His Standing to Bring a
              Claim for the Cash, and the District Court Strikes His Claim as a
              Sanction. .................................................................................... 5

III.    ARGUMENT ................................................................................... 9

        A.    This Case—Involving a Routine Application of a Court's Power to
              Enforce Its Discovery Orders—Does Not Involve a Question of
              Exceptional Importance ................................................................ 3

        B.    The Panel Opinion Is Consistent with This Court's Prior Decisions
              and with Those of Other Circuits. ......................................15

IV.     CONCLUSION ............................................................................... 18

        CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. $29,410.00 in U.S. Currency*, 600 F. App'x 621 (10th Cir. 2015) 18

*United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012) ...... 17

*United States v. $999,830.00 in U.S. Currency*, 704 F.3d 1042 (9th Cir. 2012).….

.................................................................................................... 11, 14, 17

*United States v. $284,950.00 in U.S. Currency*, 933 F.3d 971 (8th Cir. 2019) ...... 18

*United States v. 17 Coon Creek Rd.*, 787 F.3d 968 (9th Cir. 2015)...................... 16

*United States v. 2008 33' Contender Model Tournament Vessel*, 990 F.3d 725 (1st

Cir. 2021) ................................................................................................ 18

*United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159 (9th

Cir. 2016) ................................................................................................ 11

**Statutes**

18 U.S.C. § 981 ....................................................................................... 3, 5

21 U.S.C. § 801 ........................................................................................... 6

21 U.S.C. § 881(a)(6) ................................................................................ 3, 5

18 U.S.C. § 1956 .......................................................................................... 6

# I.

## INTRODUCTION

In this forfeiture action, the district court struck appellant Oak Porcelli's claim to a large sum of cash after he repeatedly defied the court's orders to respond to discovery requests concerning his standing to bring a claim for that cash, despite having disclaimed any ownership of the money at the time it was seized. The panel correctly held that the district court did not abuse its discretion by ordering Porcelli to provide adequate discovery responses regarding a material threshold issue that is "reasonably in dispute." Maj. Op. at 720. The panel also correctly held that the district court did not abuse its discretion by striking Porcelli's claim for property subject to forfeiture when Porcelli willfully and repeatedly defied the court's discovery orders and compliance "would not have been burdensome." Maj. Op. at 722. Finally, the panel held that the district court acted within its discretion in striking Porcelli's claim before ruling on a motion to suppress evidence that Porcelli had filed, given facts casting doubt on Porcelli's ownership and his repeated and deliberate refusal to engage in the discovery process. None of these commonsense holdings require this Court's further review.

As he did in his briefing before the panel, Porcelli claims that the order striking his claim embodied a judicial finding that he lacked standing, and that

he had in fact established standing beyond all dispute such that any discovery into the issue was impermissible. Both the panel majority and the dissent correctly rejected this assertion. While Porcelli argues that he would prevail on a summary judgment motion regarding his standing to claim the cash, he can only make that claim after having thwarted the discovery process that is designed to facilitate the fair litigation of that issue. As the dissent correctly noted "an assertion of ownership [can] be investigated through discovery and proven wrong." Diss. Op. at 736. Because Porcelli willfully refused to comply with the process the law provides for investigating his claim of standing, and given that his claim of standing was reasonably subject to dispute, the district court correctly refused to determine his standing and entered a default judgment against him for failure to comply with discovery procedures. Porcelli's argument that this procedure conflicts with decisions of this Court and other circuits is unavailing, as explained in the panel majority's opinion.

Finally, while Judge Bress's thoughtful dissent raises some concerns that should guide district courts when considering a motion to strike a claim for failure to comply with discovery, the majority correctly held that these issues are best resolved through the application of a district court's sound discretion in light of the facts in the case before it. As the panel majority correctly observed, the special discovery rules applicable in forfeiture actions contain

guardrails that prevent their abuse, including the requirement that any interrogatories served be "proportional to the needs of the case." Maj. Op. at 726. Further, when deciding whether the sanction of dismissal is appropriate, district courts can and should consider factors the majority identified, such as whether evidence casts doubt on the claimant's standing, whether the government's discovery requests are burdensome, and whether the claimant acted in good faith in meeting his discovery obligations. Here, because Porcelli willfully defied the district court's orders and provided no explanation for his failure to do so beyond a meritless legal objection, the district court acted within its discretion by striking the claim. No further review is warranted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. A Traffic Stop Uncovers Large Amounts of Cash in Vacuum-Sealed Bags, of Which Porcelli Disclaims Any Ownership.

This appeal concerns the in rem forfeiture of $1,106,775 in currency under 18 U.S.C. §§ 981(a)(1)(A) and (C), and 21 U.S.C. § 881(a)(6). Nevada Highway Patrol officers seized the forfeited currency during a traffic stop of a rental car Porcelli was driving in November 2019. ER-7, 12. Officers stopped Porcelli's SUV because he was tailgating another vehicle. ER-7, 130–31, 262. When asked about his driving, Porcelli asserted that he did not realize he had been tailgating because he was "not really paying attention." ER-7, 262. While

3

speaking to Porcelli, the investigating officer smelled marijuana. ER-7, 262.

Porcelli initially denied that there was any marijuana, illicit currency, or other

contraband in the SUV, but after a drug-detecting dog alerted to the presence

of drugs in the car, Porcelli and his passenger admitted that they had a

marijuana vape pen. ER-8–9, 263–65.

A probable cause search of the SUV uncovered over a million dollars in

cash in vacuum-sealed bags taped up in gray wrapping material. ER-9, 12, 264,

268. Porcelli's passenger disclaimed any ownership of the money and told the

officers she did not know what it was for. ER-10, 265.

Porcelli also disclaimed ownership of the cash. He first told the officers

that it belonged to his "employer," 401 Productions. ER-11, 267. He said he

did not know the amount of the cash in the caches; only that it was "quite a

bit." ER-9, 264. He purported to have been transporting the cash for 401

Productions for use as "petty cash for miscellaneous expenses" on a movie set

in Oregon—a movie he knew nothing about. ER-11, 267. He later said he was

actually a "freelancer for," rather than an employee of, 401 Productions.[1] ER-

---

[1]    Porcelli's indistinct and evasive responses to the government's special
interrogatories regarding his relationship to the currency, made no mention of
"401 Productions." ER-55–63 (original responses), 70–79 (supplemental
responses). The Drug Enforcement Agency found four entities with the name
of, or similar to, "401 Productions," and served administrative forfeiture
notices on all of them. ER-16, 19–20, 269–273. Only one responded, its owner
stating that he/she was "the owner and sole employee of 401 Productions,

12, 268. According to Porcelli's explanation, the $1,895 in the backpack was given to him by 401 Productions to cover his traveling expenses, and he was merely "transporting the rest of the currency on the company's behalf," disclaiming ownership of the two large caches of cash. ER-11, 267. At the conclusion of the traffic stop, the cash was seized. ER-12, 268.

**B.**     **Porcelli Repeatedly Refuses to Comply with the District Court's Orders Concerning Discovery Regarding His Standing to Bring a Claim for the Cash, and the District Court Strikes His Claim as a Sanction.**

The government filed a verified Complaint for Forfeiture in Rem of the $1,106,775 in March 2020, alleging the cash was forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 981(a)(1)(A) and (C) based on its substantial connection to violations of drug crimes under 21 U.S.C. § 801 *et seq.* and money laundering under 18 U.S.C. § 1956. ER-260–78. Porcelli filed a claim on April 30, 2020, ER-257–59, and an answer on May 21, 2020, ER-238–249. He also moved to suppress the evidence obtained in the traffic stop. SER-147. Despite disclaiming ownership of the vacuum-sealed cash during the traffic stop, Porcelli asserted an ownership and possessory interest in all the currency that the government had seized, and an affirmative defense of innocent

---

Inc." and that the forfeited funds do not belong to the company or him/her. ER-16, 273.

ownership in the Answer. ER-11–12, 31, 57, 72, 131, 139, 142, 151, 159, 246, 257–59, 267.

The government, attempting to determine Porcelli's standing, served a set of 14 special interrogatories under Supplemental Rule G(6)(a), which allows limited discovery regarding a claimant's identity and his relationship to seized property in order to determine whether a claimant has standing to assert a claim for that property.[2] ER-47–51. The interrogatories sought information regarding the nature and extent of his interest in the cash, how he acquired those interests, and information that might verify the claims Porcelli made, such as the identity of individuals who would know about his acquisition or ownership of the cash. *Id.*

In response, Porcelli identified himself, then said, "I own all of the Defendant currency seized from the vehicle I rented and had just been driving, and consequently I had and have a right to possess it and otherwise exercise dominion and control over it." ER-57. He objected to the rest of the interrogatories, arguing that by claiming ownership of the property he had

---

[2]    The government simultaneously moved to stay adjudication of Porcelli's suppression motion pending his responses to the special interrogatories, asking the court to first "address issues of identity and ownership … [to] clarify Claimants' relationship to the property under state law and whether they will be able to meet their burden of demonstrating Article III standing." *See* SER-135–36 (motion to stay).

already "established Article III standing" and that the government's discovery requests for information that could test or undermine his assertion of standing could serve no relevant purpose under Rule G(6). ER-55–63.

The court disagreed. When the government moved to compel Porcelli to respond more fully to the interrogatories, or in the alternative to strike Porcelli's claim as a sanction, a magistrate judge overruled Porcelli's objections and ordered him to provide full and complete responses. ER-31; SER-89–127. The magistrate judge also granted the government's motion to stay further discovery until Porcelli fully responded to the interrogatories, finding that good cause existed to allow discovery regarding the threshold issue of Porcelli's standing to proceed before discovery on merits or suppression issues. *See* ER-133.

Porcelli objected to the magistrate judge's order, but the district court overruled the objection, finding that Porcelli's response "impair[ed] the 'truth-seeking function of Rule G(6) and hinder[ed] [the government's] ability to gather information on Porcelli's standing." ER-133. It also agreed that good cause existed to allow discovery on the threshold issue of standing to proceed before allowing discovery into other issues. ER-135. The district court denied the government's conditional motion to strike Porcelli's claim, however, reasoning that a claimant is "typically afforded 'one or even several

opportunities to cure defective Rule G(6) responses.'" ER-135. The district
court therefore denied the motion without prejudice to afford Porcelli that
opportunity. *Id.*

Porcelli supplemented his responses with information the district court
later deemed "indistinct and evasive." ER-93. He stated that he had "earned
[his] money ... by working in the movie industry for 15 years, from ~1995-
2010, and saving it." ER-74. He asserted that most of the money originated as
cash from "a mix of funding entities: individual investors up to large studios
like Paramount, MGM, Disney and others." *Id.* He also provided a link to his
IMDB page, which confirmed that he had last worked in the movie industry
roughly a decade prior to the car stop. *Id.* Porcelli did not respond to
interrogatories asking him to identify anyone else who may have an interest in
the property, transactions involving the property, or changes in form the
property took while in his possession, instead repeating his overruled
objections. ER-68–79.

After reviewing Porcelli's supplemental responses and finding them
"indistinct and evasive," the district again ordered Porcelli to provide complete
responses. ER-93–94. While the district court declined to strike Porcelli's claim
as a sanction, it stated that Porcelli would be afforded a "final" chance to cure
his deficient responses, and "warn[ed] Porcelli that his failure to respond

adequately henceforth [would] result in the Court striking" his claim for the
cash. ER-94. Porcelli was given thirty days to comply with this order. *Id.*

That deadline passed without further response from Porcelli. ER-32.
While the district court *sua sponte* extended that deadline a further 15 days,
rather than supplementing his responses as ordered Porcelli filed a notice
"declin[ing] to further respond." ER-32–33. Porcelli informed the court and
the government that he anticipated his refusal would "lead [the parties] out of
the District Court and to the Ninth Circuit." ER-42. Only then, more than two
years after the government served the special interrogatories, did the district
court strike Porcelli's claim under Supplemental Rule G(8)(c)(i)(A) as a
discovery sanction. ER-30–34. The court then entered a default, ER-29, a
default judgment of forfeiture, ER-7–28, and a final judgment of forfeiture. ER-
4–5.

## III.

## ARGUMENT

### A.    This Case—Involving a Routine Application of a Court's Power to Enforce Its Discovery Orders—Does Not Involve a Question of Exceptional Importance.

As the panel majority correctly explained, this case concerns a discovery
issue: whether a district court may strike a claim in a civil forfeiture action
when the claimant repeatedly and deliberately refuses to comply with the

court's discovery orders regarding a disputed material issue. Maj. Op. at 714–15. Porcelli's petition argues that the district court erred by placing an improper burden on him to prove standing. Pet. at 1, 13. But the district court never reached the issue of Porcelli's standing, or assigned any evidentiary burdens, because Porcelli's refusal to participate in discovery frustrated the fair litigation of that issue. Given that the only "burden" the district court placed on Porcelli was the obligation to reasonably respond to discovery regarding a disputed issue, the panel correctly held that (1) where a claimant's standing is reasonably in dispute, (2) he has only provided vague or evasive responses to discovery requests on that issue even though it would not be burdensome to provide more information, and (3) he has repeatedly defied court orders to provide adequate responses without any justification for his noncompliance, a district court is within its discretion to strike the claimant's claim. Maj. Op at 722. That commonsense holding affirms the basic necessity of granting district courts power to manage discovery disputes before them and to punish discovery misconduct. No further review is warranted.

Porcelli argues, as he did before the panel, that once he has asserted he owns the cash in question the government cannot contest that assertion or seek discovery on that issue. Pet. at 13–19. But Porcelli denied ownership of the cash at the time it was seized, and where a claimant's assertion of ownership is

10

controverted by other evidence, the government may investigate and contest a claimant's standing, as it did here. *United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1165 (9th Cir. 2016). Porcelli's bald assertion of standing might be sufficient to withstand a motion for judgment on the pleadings or a motion for summary judgment in the absence of evidence undermining his ownership. *See United States v. $999,830.00 in U.S. Currency*, 704 F.3d 1042, 1043 (9th Cir. 2012) (holding that weighing of evidence on standing is inappropriate *at motion to dismiss stage* but that evidence contravening standing "may be relevant evidence at such time as a motion for summary judgment is filed"). But as both the majority and the dissent both recognized, that does not allow him to opt out of the discovery process and thereby deny the government an opportunity to develop evidence that would undercut his claim of standing. Maj. Op. at 719 (noting that while an assertion of standing is sufficient to survive judgment on the pleadings, "[l]itigants are never permitted to rest on their laurels when they file a complaint that would survive a motion to dismiss"); Dis. Op. at 736 (Porcelli's cited cases "do not mean that an assertion of ownership cannot be investigated through discovery and proven wrong").

Accordingly, the basic obligation to participate in civil discovery is not a "new standing requirement," as the petition asserts. Pet. At 13. Indeed, if

Porcelli were correct that a bare assertion of ownership were enough to immunize a claimant from discovery on the issue of standing, the special interrogatories authorized by Supplemental Rule G(6) would serve no purpose, as its only role is "is to permit the government to … gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)).

Porcelli also argues that requiring claimants to answer special interrogatories after they have asserted standing essentially shifts the burden of proof in civil forfeiture cases. Pet. at 12–13. The majority correctly rejected that contention. Maj. Op. at 720–723. The district court never held Porcelli to any evidentiary burden, as it never adjudicated the issue of whether he had standing. It simply required him to provide more than "indistinct and evasive" responses to the government's discovery requests. ER-31. The court only struck Porcelli's claim after he deliberately refused to comply with its discovery orders, a choice the panel appropriately characterized as "particularly perplexing because it would not have been burdensome to provide a bit more information." Maj. Op. at 722. Requiring a party to participate in the discovery process in good faith does not shift the evidentiary burden to that party, and Porcelli was not terminated from the case for failure to meet an evidentiary burden. He was only terminated after he "made a calculated

litigation gamble of inviting termination sanctions" by deliberately and repeatedly defying the district court's orders without explanation. Maj. Op. at 722, 722 n.6.

Finally, Porcelli asserts that the panel decision, by allowing the district court to order discovery on standing and impose sanctions for a party's failure to comply, would "nullify" the procedure that allows claimants to exclude evidence in forfeiture proceedings that was seized in violation of their Fourth Amendment rights. Pet. at 18-19. But this wrongly assumes that district courts are not capable of using their discretion to sequence litigation before them. The panel set forth several factors district courts should consider when deciding to allow discovery on standing to proceed before other issues, all of which are typical considerations of the civil discovery process. Maj. Op. at 724. These include whether standing is genuinely at issue, the reasonableness of the special interrogatories propounded and the burden of responding, and whether a claimant has acted in good faith to meet his discovery obligations. *Id.*

A district court may reasonably conclude, when considering these factors, that a suppression motion should proceed before resolving discovery disputes over standing. But it may also reasonably conclude that the government should be allowed to investigate standing, and Porcelli can hardly

complain that the district court chose this route given that all the factors above weighed against allowing his continued stonewalling.

The district court here was particularly justified in concluding that orders compelling further responses from Porcelli were necessary given the lack of any attempt on Porcelli's part to justify the responses he provided as a good faith effort to participate in discovery. After initially refusing to provide any response at all, Porcelli responded to the government's interrogatories with a response that gave little more information than an assertion he had earned the cash from his "prior jobs." Maj. Op. at 722. After the district court determined that Porcelli's evasive answers were inadequate[3] and ordered him to supplement them, Porcelli ignored the court's deadline and then filed a notice that he would "decline to further respond." ER-32. He made what the majority correctly identified as a "calculated gamble of inviting terminating sanctions," telling the government that he would be "out of the District Court and to the Ninth Circuit" where he felt "confident that [he would] prevail." Maj. Op. at 722 n. 6, ER-42. While there may be cases in which the burdens of responding

---

[3]     The district court was well within its discretion to conclude that Porcelli's "indistinct and evasive" answer was insufficient, particularly given that Porcelli had ceased working in the jobs he referenced roughly a decade before the cash was seized. ER-93; ER-74, 76 (Porcelli's responses asserting the cash had been earned from jobs worked "from ~1995-2010" and mostly had never been deposited in any bank).

to discovery justify a claimant's incomplete or general response to interrogatories,[4] this case is not one of them, and Porcelli himself makes no argument otherwise. Rather, as the majority observed, this case stands for the simple proposition that "it is never a smart litigation strategy to openly and repeatedly defy a court's orders." Maj. Op. at 722.

**B.      The Panel Opinion Is Consistent with This Court's Prior Decisions and with Those of Other Circuits.**

The panel's holding that dismissal is an appropriate sanction for a party's persistent refusal to participate in discovery on a contested issue in defiance of repeated court orders comports with this Court's precedents, and the precedents of other circuits. None of the cases Porcelli cites hold that a party may unilaterally refuse to respond to discovery requests related to standing when standing is reasonably in dispute.

Attempting to find conflict with this Court's prior precedents, Porcelli cites *United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 975 (9th Cir. 2015) for the proposition that a court cannot strike his claim for failure to respond to interrogatories on standing. Pet. at 1–2. But that case, involving a claim to real

---

[4]      While the dissent raises some thoughtful concerns about the difficulty bona fide claimants may have in accounting for the circumstances in which they obtained cash, those concerns are not implicated in this case, where Porcelli made no serious effort to account for the provenance of the cash he asserted was his, nor to explain why he was unable to provide an accounting.

property by a resident of the property who was also the recorded owner, held only that failure to respond to Rule G(6) interrogatories does not warrant striking a claim where "a claimant's Article III and statutory standing are not reasonably in dispute …." 787 F.3d at 977. Here, as the majority correctly observed, Porcelli's ownership was properly subject to dispute, and the district court was therefore justified in both ordering discovery and issuing sanctions to enforce its orders. Maj. Op. at 720; *see also* Diss. Op. at 737 (citing *Coon Creek* for the proposition that the government is entitled to adversarial testing of a claimant's continued standing). Porcelli's other cited cases from this Court fare no better in establishing his asserted immunity from discovery on the contested issue of standing. *See $999,830.00 in U.S. Currency*, 704 F.3d at 1043 (acknowledging that evidence contravening standing "may be relevant evidence at such time as a motion for summary judgment is filed"); *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) (affirming grant of government's motion for summary judgment on standing grounds where claimant did not provide sufficient evidence of ownership of the subject property).

16

Nor does Porcelli identify any conflict with precedent from other circuits that would warrant further review. *Contra* Pet. at 3–4. The panel majority ably explained why none of Porcelli's cited cases stand for the proposition that a claimant immunizes himself from discovery related to his standing simply by asserting ownership of the property. Maj. Op. at 724–725. Because those cases all involved either undisputed claims of standing or final determinations of a claimant's standing, none speak to a district court's power to order discovery on a properly contested issue. *See id.* Additionally other circuits recognize that simply pleading standing does not put an end to the question and that the Government is entitled to test allegations in pleadings through special interrogatories. *See, e.g. United States v. 2008 33' Contender Model Tournament Vessel*, 990 F.3d 725, 728 (1st Cir. 2021) (affirming the striking of a claimants' claim for failure to respond to special interrogatories even after the claimant asserted in their claims to be the owners of the defendant property); *United States v. $284,950.00 in U.S. Currency*, 933 F.3d 971, 974 (8th Cir. 2019) (affirming the striking of a claimant's claim for failure to respond to special interrogatories and rejecting claimant's contention that he did not have to respond to discovery because he alleged an ownership interest in his claim);

17

*United States v. $29,410.00 in U.S. Currency*, 600 F. App'x 621, 622 (10th Cir. 2015) (affirming the striking of a claim asserting ownership because the claimant failed to answer special interrogatories). Porcelli therefore fails to identify a circuit conflict that would warrant further review.

## IV.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court deny Porcelli's petition for further rehearing.

Dated this 26th day of June, 2025.

Respectfully submitted,

SIGAL CHATTAH
United States Attorney

ADAM FLAKE
Appellate Chief

*s/ Peter H. Walkingshaw*
PETER H. WALKINGSHAW
Assistant United States Attorneys
400 South Virginia, Suite 900
Reno, Nevada 89501
775-784-5438
*Attorneys for the United States*

18

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a) and Ninth Circuit Rule 40-1, the

attached **GOVERNMENT'S RESPONSE TO PETITION FOR**

**REHEARING** is proportionately spaced, has a typeface of 14 points, and

contains 3,979 words, excluding the portions exempted by Fed. R. App. P.

32(a)(7)(B)(iii).

Dated this 26th day of June, 2025.

_s/ Peter H. Walkingshaw_
PETER H. WALKINGSHAW
Assistant United States Attorney

19